**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | CASE NO. 1:11-cv-2176 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | NANCY A. VECCHIARELLI |
| | ) | |
| SOUTHGATE BUSINESS CENTER, | ) | |
| LLC, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

      This case is before the undersigned United States Magistrate Judge upon the

consent of the parties.  Before the Court is the successive motion for summary

judgment filed by Plaintiff, Wells Fargo Bank, N.A. ("Wells Fargo").  (Doc. No. 72.)

Defendant, Southgate Business Center, LLC ("Southgate") has agreed not to oppose

the successive motion for summary judgment.  (Doc. No. 69.)  For the reasons set forth

below, Wells Fargo's motion for summary judgment is GRANTED as detailed herein.

## I.  BACKGROUND

### A.  Factual Background

      The following material facts are not in dispute.  In August 2006, Southgate

obtained a loan from Key Bank National Association ("Key Bank") in the amount of

$1,395,000, under terms set forth in a promissory note ("Note").  (Complaint ("Compl.")

at ¶ 5 & Ex. A, Doc. No. 1 at 2, Doc 1-1; Answer ("Ans.") at ¶ 5, Doc. No. 32 at 2.)  To

secure the loan, Southgate executed to Key Bank an open-ended mortgage,

assignment of rents and security agreement ("Mortgage") on property located at 5311

Northfield Road in Bedford Heights, Cuyahoga County, Ohio ("Mortgaged Premises"), of

which Southgate was the owner.  (Compl. at ¶¶ 6-7 & 11, Ex. B (Mortgage), Ex. C (Description of the Mortgaged Premises), Doc. No. 1 at 2, Doc. No. 1-2, 1-3; Ans. at ¶¶ 6-7 & 11, Doc. No. 32 at 2.)  To further secure the loan, Southgate granted Key Bank a security interest in, *inter alia*, the furniture, fixtures and things on the Mortgaged Premises, as described in various UCC-1 Financing Statements ("UCC-1s").  (Compl. at ¶ 8, Doc. No. 1 at 2; Ans. at ¶ 8, Doc. No. 32 at 2.)  Thereafter, Key Bank assigned the Mortgage and the UCC-1s to Wells Fargo. (Compl. at ¶¶ 9-10, Doc. No. 1 at 3; Ans. at ¶¶ 9-10, Doc. No. 32 at 2.)

Subsequent to the assignment of the Mortgage and the UCC-1s to Wells Fargo, Southgate defaulted under the terms and conditions of the Note and Mortgage.  (Notice of Compliance with the Sixth Amended General Order No. 2006-16 at Ex. C (Affidavit of Pete Totter ("Totter Aff.") at ¶¶ 8-9, Doc. No. 71-3 at ¶¶ 8-9.)  Under the terms of the Note and the Mortgage, as of October 11, 2011, Southgate owed Wells Fargo $1,739,806.83, together with continuing per diem interest thereon in the amount of $249.27 per day at the regular rate from and after October 12, 2011 and continuing per diem interest thereon in the amount of $401.00 per day at the default rate.  (*Id.* at  ¶ 10.)

### B.    Procedural Background

In October 2011, Wells Fargo filed a Complaint in Mortgage Foreclosure.  (Doc. No. 1.)  Attached to the Complaint were copies of: (1) the Note (Doc. No. 1-1); (2) the Mortgage (Doc. No. 1-2); (3) a legal description of the Mortgaged Premises (Doc. No. 1-3.); (4) the assignment of the Mortgage and the UCC-1s to Wells Fargo from Key Bank (Doc. No. 1-4); and (5) an affidavit from Pete Totter, a servicing officer of C-III Asset

2

Management, the special servicer for Wells Fargo with respect to the Mortgage at issue here (Doc. No. 1-5).  The UCC-1s were not attached to the Complaint.  In February 2012, after unsuccessfully moving to dismiss the Complaint, Southgate filed its Answer, in which it generally admitted the allegations in the Complaint, with the exception of specific paragraphs discussed below.  (Doc. No. 32.)  In March 2012, this Court appointed the Receiver to operate, manage and conserve the Mortgaged Premises. (Doc. Nos. 37, 45.)

In August 2012, Wells Fargo moved for summary judgment, requesting that this Court enter summary judgment in its favor, and grant it miscellaneous relief, including: (1) ordering that the liens of the Mortgage and the UCC-1s be adjudged valid and persisting first liens on the Mortgaged Premises; (2) fixing the amount due under the Note and Mortgage at $1,739,806.83, together with continuing per diem interest thereon in the amount of $249.27 per day at the regular rate from and after October 12, 2011 and continuing per diem interest thereon in the amount of $401.00 per day at the default rate until the Mortgaged Premises is sold at foreclosure sale, together with all other amounts advanced by Wells Fargo during the pendency of this action, together with additional fees and costs and costs of the foreclosure sale; (3) ordering that the Mortgaged Premises be sold and the proceeds of such sale be applied first in payment of the judgment of Wells Fargo; (5) ordering that Wells Fargo may become a purchaser of the Mortgaged Premises at the sale; and (6) authorizing the Receiver to make and conduct a sale of the Mortgaged Premises pursuant to 28 U.S.C. § 2001, *et seq.* (Doc. No. 58.)

In September 2012, this Court granted in part and denied in part Wells Fargo's

3

motion for summary judgment.  (Doc. No. 67.)  Specifically, this Court granted Wells Fargo summary judgment against Southgate with respect to Southgate's default and the amount owed under the terms of the Note and Mortgage.  However, because Wells Fargo failed to provide sufficient evidence that it is entitled to relief beyond the amount due under the terms of the Note and Mortgage, this Court denied the motion for summary judgment to the extent it sought relief beyond the entry of judgment in Wells Fargo's favor for the amount due under the terms of the Note and Mortgage.  (*Id.*) Specifically, this Court noted that Wells Fargo had failed to comply with the Court's General Order 2006-16 by, *inter alia*, failing to file a Preliminary Judicial Report, and had failed to provide any information with respect to the UCC-1s.  (*Id.* at 11-12.)

In October 2012, Wells Fargo filed a Notice of Compliance with the Sixth Amended General Order No. 2006-16 Sections 1.2.1, 1.2.2 and 1.2.5 ("Notice of Compliance").  (Doc. No. 71.)  The Notice of Compliance was accompanied by the following: (1) a certified Judicial Commitment Endorsement (Doc. No. 71-7); (2) a history of Southgate's payments on the loan (Doc. No. 71-2); (3) the Totter Affidavit (Doc. No. 71-3); and (4) the report of a UCC Financing Statement search, prepared by Zodiac Title Services, LLC ("UCC-1 Report") (Doc. No. 71-4).  Thereafter, Wells Fargo filed a Successive Motion for Summary Judgment, relying on items filed with the Notice of Compliance, and requesting that this Court grant it the following relief: (1) ordering that the liens of the Mortgage and UCC-1s be adjudged valid and persisting first liens on the Mortgaged Premises, subject only to the lien of the Cuyahoga County Treasurer; (2) foreclosing all right, title, lien and equity of redemption which Southgate and all those claiming by, through or under it has or had in the Mortgaged Premises; (3) ordering that

4

the Mortgaged Premises be sold and the proceeds of such sale be applied first in payment to the Cuyahoga County Treasurer for any outstanding tax liabilities which arise prior to the sale and next in payment of the judgment of Wells Fargo; (4) ordering that Wells Fargo may become a purchaser of the Mortgaged Premises at the sale; and (5) any other such relief as this Court deems appropriate.  (Doc. No. 72 at 5.)

On October 15, 2012, this Court issued an order noting that the UCC-1 Report was not properly authenticated, and ordering Wells Fargo to file an affidavit or declaration placing the UCC-1 Report in proper evidentiary form.  (Doc. No. 73.)  On October 18, 2012, Wells Fargo filed the affidavit of Nicole Spickler, paralegal at Delany Corporate Services, Ltd., who performed the UCC Financing Statement Search that is the subject of the UCC-1 Report ("Spickler Aff.").  (Doc. No. 77.)  In her affidavit, Spickler describes the basis of her knowledge of the report, and attests to the authenticity and accuracy of its contents.  (*Id.*)  Southgate does not oppose the successive motion for summary judgment.

## II.    LAW & ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S.

5

317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must produce evidence that results in a conflict of material fact to be resolved by a jury.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact.  *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)).  The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Id.* (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

In reviewing summary judgment motions, a court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  In addition, the court does not weigh the evidence or make credibility determinations.  *Joostberns v. U. Parcel Servs., Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  The determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the nonmoving party.  *Id.* Ultimately, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one

party must prevail as a matter of law.  *Anderson*, 477 U.S. at 251-52.

      **B.**    **Application of Standard**

           **1.**      **Lien Priority And Necessary Parties**

      Wells Fargo requests that this Court adjudge the liens of the Mortgage and the UCC-1s valid and persisting first liens on the Mortgaged Premises, subject only to the liens of the Cuyahoga County Treasurer.  (Brief in Support of Successive Motion for Summary Judgment at 11, Doc. No. 72-1 at 11.)  Wells Fargo argues that the Judicial Commitment Endorsement and UCC-1 Report are sufficient to demonstrate that there are no other liens on the Mortgaged Property.

      This foreclosure action is in federal court as a matter of diversity jurisdiction and there is no dispute that the substantive laws of Ohio govern its disposition.  In Ohio, mortgage priority is governed by the date of filing with the county recorder; mortgages "take effect in the order of their presentation."  Ohio Rev. Code § 5301.23(A); *ABN AMRO Mtgs. Group, Inc. v. Kangah*, 126 Ohio St. 3d 425, 426, 934 N.E.2d 924, 926 (Ohio 2010).  Judgment liens take priority in the order that their underlying certificates of judgment are filed with the clerk of courts.  *See* Ohio Rev. Code § 2329.02; *Standard Hardware & Supply Co. v. Bolen*, 115 Ohio App. 3d 579, 582, 685 N.E.2d 1264, 1266 (Ohio Ct. App. 4th Dist. 1996).  Review of the Judicial Commitment Endorsement reveals that no entity other than Wells Fargo has recorded a lien on the Mortgaged Premises.  (Judicial Commitment Endorsement at 6-8, Doc. 71-1 at 6-8.)  Accordingly, there is no genuine issue of material fact regarding whether Wells Fargo's lien under the Mortgage is first in priority, as no other liens have been recorded.

      Wells Fargo also argues that the Cuyahoga County Treasurer is not a

necessary party to this action because Ohio law specifically requires the payment of taxes out of the proceeds of a judicial sale.  This argument is well taken.  When real estate is sold at a judicial sale, Ohio Revised Code § 323.47 requires the court to order payment of taxes and assessments "the lien for which attaches before the confirmation of sale but that are not yet determined, assessed, and levied for the year in which confirmation occurs" and "[a]ll other taxes and assessments, penalties and interest the lien for which attached for a prior tax year but that have not been paid on or before the date of confirmation."  Ohio R.C. § 323.47(B)(1)(a)-(b).  In other words, under Ohio law, a court must order the payment of tax liens out of the proceeds of a judicial sale, regardless of when those liens attached.  Furthermore, at least one Ohio court has concluded that, where a decree of foreclosure acknowledges that: (1) a county treasurer has nor may have an interest in the real estate; and (2) the treasurer's interest is the first and best lien on the real estate, the decree sufficiently protects the interest of the treasurer such that he or she is not a necessary party to the action.  *See Advantage Bank v. Bodo*, No. 2010CV04334, 2012 WL 2415496 (Ohio Ct. App. June 22, 2012).

Here, the Judicial Commitment Endorsement reflects that the taxes and assessments for the last half of tax year 2011 are paid, and that the taxes and assessments for tax year 2012 are not yet due and payable.  (Judicial Commitment Endorsement at 6-8, Doc. 71-1 at 6-7.)  There are no tax liens reflected on the Judicial Commitment Report.  (*Id.*)  Further, Wells Fargo requests that this Court order that the proceeds of any sale in this matter "be applied first in payment to the Cuyahoga County Treasurer for any outstanding tax liabilities which arise prior to the date of the sale." (Brief in Support of Successive Motion for Summary Judgment at 11, Doc. No. 72-1 at

8

11.)  Accordingly, the Cuyahoga County Treasurer is not a necessary party to this action, and the order requested by Wells Fargo will sufficiently protect the interest of the Treasurer should a tax lien attach prior to the sale of the Mortgaged Premises.  Further, because no other entity has recorded a lien against the Mortgaged Premises, Wells Fargo has named all necessary parties in its Complaint.

Wells Fargo argues that the liens under the UCC-1s are also first in priority. Copies of the UCC-1s attached the UCC-1 Report reflect that: In August 2006, Southgate granted to Key Bank an interest in, *inter alia*, improvements to the mortgaged premises; furniture, fixtures and machinery attached to or located on the mortgaged premises; and Southgate's bank accounts.  (UCC-1 Report at File No. OH00105248666, Doc. 71-4 at 7-8.)  In October 2007, Key Bank assigned its interest under the UCC-1s to Wells Fargo.  (UCC-1 Report at File No. 30073040234, Doc. No. 71-4 at 8.)  In May 2011, Wells Fargo filed a continuation to postpone the lapse date of the filing statement.  (UCC-1 Report at File No. 20111430290, Doc. 71-4 at 9.)  The UCC-1 Report reflects that there are no records of any other UCC financing statements filed with the Ohio Secretary of State in which Southgate is listed as the debtor.  (UCC-1 Report at 1, Doc. No. 71-4 at 1; Doc. 77..)  Accordingly, there is no evidence that other entities possess an interest in the items that are the subject of the UCC-1s in this case.

Given the evidence discussed above, there is no genuine issue of material fact regarding whether Wells Fargo's liens under the Mortgage and the UCC-1s are currently first in priority.  Further, to the extent that a tax lien may attach prior to the sale of the Mortgaged Premises, Ohio law and the order requested by Wells Fargo adequately protect the interest of the Cuyahoga County Treasurer.  Accordingly, Wells

Fargo is entitled to judgment that its liens are "valid and persisting first liens on the Mortgaged Premises, subject only to the lien of the Cuyahoga County Treasurer." (Brief in Support of Successive Motion for Summary Judgment at 11, Doc. No. 72-1 at 11.)

### 2.    Foreclosing All Right, Title, Lien and Equity Of Redemption

Wells Fargo requests that this Court foreclose "all right, title, lien and equity of redemption which [Southgate] and all those claiming by, through or under it has or had in the Mortgaged Premises." (Brief in Support of Successive Motion for Summary Judgment at 11, Doc. No. 72-1 at 11.)    As discussed in this Court's prior Memorandum Order and Opinion, Wells Fargo has demonstrated that there is no genuine issue of material fact with respect to the elements of a foreclosure action under Ohio law. (Memorandum Order and Opinion on Plaintiff's Motion for Summary Judgment at 6-7, Doc. No. 67 at 6-7.)  Accordingly, Wells Fargo is entitled to an order foreclosing all right, title, lien and equity of redemption which Southgate and all those claiming by, through or under it has or had in the Mortgaged Premises.[1]

---

[1]    It is worth noting, however, that, under Ohio law, a debtor's right to redemption "is  dual in nature, arising both from equity and statute." *Hausman v. Dayton*, 653 N.E.2d 1190, 1194, 73 Ohio St.3d 671, 676 (Ohio 1995).  Although a debtor's equity of redemption is "typically cut off once a mortgagee seeks and is granted a decree of foreclosure," the statutory right remains until the sale is confirmed.  653 N.E.2d at 1194-95, 73 Ohio St.3d at 676.  This is because the relevant statute provides that a debtor may redeem real estate that is subject to judicial sale "at any time before the confirmation" of that sale.  Ohio Rev. Code § 2329.33; *see Hausman*, 653 N.E.2d at 1194-95, 73 Ohio St.3d at 676.  Although a debtor may waive the right of redemption after entering into a mortgage agreement, *see Hausman*, 653 N.E.2d at 1195, 73 Ohio St.3d at 677, here, Wells Fargo has not offered any evidence – or pointed to any term in the Mortgage or Note – that Southgate waived its right of redemption.  Accordingly, Southgate's equity of redemption will extinguish with this Court's decree of foreclosure, but it's statutory right of redemption will remain until the sale of the Mortgaged Premises is confirmed.

### 3.    Other Relief

Wells Fargo requests that this Court order that the Mortgaged Premises be sold by the Receiver.  (Brief in Support of Successive Motion for Summary Judgment at 12, Doc. No. 72-1 at 12.)  This Court's Sixth Amended General Order 2006-16 governs the procedure applicable to foreclosure actions based on diversity jurisdiction in this Court.[2] The order requires a plaintiff who has obtained an order of foreclosure against a defendant to file a motion for an order of sale, along with a deposit of $1,400 to cover the cost of appraisal and the fee of a master commissioner, both required by General Order 2006-16.  *See* General Order 2006-16 at ¶ 3.1.  After granting a motion for an order of sale, the Court appoints a master commissioner, who prepares for and conducts the sale in accordance with the terms set forth in the General Order, including by selecting the appraisers from the list maintained by this Court.  *Id.* at ¶¶ 3.2-3.14, 6.1-6.3.

Here, Wells Fargo's request for an order sale of the Mortgaged Premises does not comply with General Order 2006-16 because Wells Fargo does not make the request in a motion for an order of sale.  Nor has Wells Fargo provided the deposit or

---

*See* General Order 2006-16 at ¶ 3.12 (allowing for the debtor's exercise of its right of redemption pursuant to Ohio Rev. Code § 2329.33 prior to confirmation of the sale).

[2]   General Order 2006-16 is available on this Court's web site at http://www.ohnd.uscourts.gov/home/clerk-s-office-and-court-records/foreclosure-information/.  This Court has advised the parties on several occasions that General Order 2006-16 governs the procedure for foreclosure actions based on diversity jurisdiction in this Court.  (Minute Order of 9/17/2012 Status Conference, Doc. No. 65; Memorandum Opinion and Order at 10, Doc 67 at 10; Minute Order of 9/25/2012 Telephone Conference, Doc. 69.)  Plaintiff is reminded to follow the rules and orders of this Court.

the fee required by the General Order. However, given the procedural difficulties and deficiencies that have already occurred in this case – along with their resulting delay – rather than require Wells Fargo to file yet another motion in this matter, this Court will construe its request for sale as a motion for an order of sale, and grant it as follows:

Rather than appointing a master commissioner, the Court will permit the Receiver to conduct the sale of the Mortgaged Premises. However, the Receiver shall follow the procedure for foreclosure sales set forth in Sections III and VI of General Order 2006-16; that is, the Receiver must perform all of the actions and duties required of a master commissioner in General Order 2006-16, including by selecting the appraisers according to the procedure set forth in Section VI of the General Order, and shall be compensated at the amounts set forth in the General Order for all work relating to the sale of the Mortgaged Premises. Because the Receiver – as opposed to a master commissioner – will obtain the appraisal required by General Order 2006-16 and will conduct the sale, Wells Fargo is not required to pay to this Court the $1,400 deposit required by the General Order. The Receiver will be reimbursed from receipts received from operation of the Mortgaged Premises by the Receiver, as set forth in ¶ 14 of the Order Appointing the Receiver in this matter. (Doc. No. 37.)

Finally, Wells Fargo requests that this Court order that Wells Fargo may become a purchaser of the Mortgaged Premises at sale. (Brief in Support of Successive Motion for Summary Judgment at 12, Doc. No. 72-1 at 12.) General Order 2006-16 does not specifically address whether a plaintiff in a foreclosure action may purchase the subject property. However, the General Order does provide that, where the plaintiff is the successful bidder at the foreclosure sale, the plaintiff is not required to

12

make a deposit to the master commissioner that is otherwise required of the successful bidder.  *See id.* at ¶ 3.9 ("[H]owever, in the event the successful bidder is the plaintiff, no such deposit shall be required.")  Accordingly, General Order 2006-16 clearly contemplates that a plaintiff may become a purchaser at sale, and, thus, this request is granted.

### III.    CONCLUSION

For the foregoing reasons, Wells Fargo's successive motion for summary judgment is GRANTED as discussed herein, and the following is hereby ORDERED:

1.    The liens of the Mortgage and the UCC-1s are adjudged valid and persisting first liens on the Mortgaged Premises subject only to the lien of the Cuyahoga County Treasurer;

2.    All right, title, lien and equity of redemption which Southgate and all those claiming by, through or under it has or had in the Mortgaged Premises, as more fully described in Exhibit C to Wells Fargo's complaint, are foreclosed;

3.    The Mortgaged Premises shall be sold and the proceeds of such sale shall be applied first in payment to the Cuyahoga County Treasurer for any outstanding tax liabilities that arise prior to the date of the sale and next in payment to the judgment of Wells Fargo;

4.    Wells Fargo may become a purchaser of the Mortgaged Premises at the sale;

5.    The Receiver shall make and conduct the sale in accordance with the procedure for foreclosure sales set forth in Section III of General Order

2006-16, including by selecting the appraisers according to the procedure set forth in Section VI of the General Order, and shall be compensated at the amounts set forth in the General Order for all work relating to the sale of the Mortgaged Premises; and

6.      Wells Fargo is not required to deposit the $1,400 otherwise required by this Court's General Order 2006-16; the Receiver shall be reimbursed from receipts received from operation of the Mortgaged Premises by the Receiver, as set forth in ¶ 14 of the Order Appointing the Receiver in this matter (Doc. No. 37).

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: October 24, 2012

14